[Civ. No. 1226.   First Appellate District.—December 31, 1913.]

ALAN FRANK WILLIAMS, by M. A. Steen, his Guardian *ad litem*, Appellant, v. BENJAMIN IDE WHEELER et al., Respondents.

STATE UNIVERSITY—STATUS AS CONSTITUTIONAL DEPARTMENT OF BODY POLITIC.—In the constitution of 1879, by section 9 of article IX thereof, the University of California was raised to the dignity of a constitutional department or function of the state government.

ID.—HEALTH REGULATIONS—POWER OF REGENTS TO REQUIRE STUDENTS TO BE VACCINATED.—In the absence of any express legislative ac-tion looking to the adoption of a general law requiring vaccination as a condition of admission to a public educational institution, the board of regents of the state university have the right to make and enforce a reasonable rule upon that subject.

ID.—VACCINATION AS PREREQUISITE TO ENTERING UNIVERSITY—POWER OF REGENTS TO DEMAND.—The board of regents of the university of California have power to adopt and enforce a rule requiring vaccination as a prerequisite to the admission of a student to the university, in the absence of legislation lawfully limiting the exer-cise of that power.

ID.—EXEMPTION CLAUSE IN VACCINATION STATUTE—WHETHER AVAIL-ABLE TO STUDENTS OF UNIVERSITY.—The provision of the act of 1911 (Stats. 1911, p. 295) which seeks to exempt those persons who are conscientiously opposed to the practice of vaccination from the operation of the law, otherwise general in its terms, requiring vaccination of persons seeking admission to educational institu-tions, is not in the nature of a health regulation; and, not being so, it is not such a proviso as comes within the general police powers with which the legislature is invested.  Hence it cannot be availed of by those seeking enrollment in the University of Califor-nia, to nullify the effect of the rule of the regents of the uinversity that every person in attendance as a student, or applying for en-rollment as such, shall produce evidence satisfactory to the authori-ties thereof that he has been successfully vaccinated within seven years prior to such attendance or application, or else be vaccinated.

APPEAL from a judgment of the Superior Court of Alameda County refusing a Writ of Mandate.  William H. Waste, Judge.

The facts are stated in the opinion of the court.

Samuels & Magnes, and Jacob M. Blake, for Appellant.

Warren Olney, Jr., and Jared How, for Respondents.

RICHARDS, J.—This is an appeal from a judgment of the superior court of the county of Alameda, denying the application of the appellants for a writ of mandate.

The facts are briefly as follows: The plaintiff, Alan Frank Williams, a young man of the age of eighteen years, applied to be enrolled as a student at the University of California. The rules of the board of regents of the university require that every person in attendance as a student, or applying for enrollment as such, in the university, shall produce evidence satisfactory to the authorities thereof that he has been successfully vaccinated within seven years prior to such attendance or application; or else be vaccinated. The plaintiff had not been successfully vaccinated within such period, and refused to be vaccinated, but presented to the authorities in charge of the university a statement in writing signed by his parents, stating that such parents were conscientiously opposed to the practice of vaccination and would not consent to the vaccination of said plaintiff. The authorities of the university still refusing him admission as a student therein, the plaintiff, by his guardian *ad litem*, applied to the superior court for a writ of mandate to compel such admission. The application was heard upon stipulated facts and was denied; whereupon plaintiff prosecutes this appeal.

It is the contention of the appellant that, having met the requirements of the general law as set forth in the statutes of 1911, prescribing the conditions with respect to vaccination to be complied with for admission as a student to the educational institutions of the state, he is entitled to enrollment in the university.

The act of 1911 (Stats. 1911, p. 295) provides that within five days after any child or person shall be received, enrolled, entered or employed in any school, college, university, academy or other educational institution within the state of California, such child or person shall file with those in authority over such institution, (a) a certificate showing that such child or person has been successfully vaccinated within seven years prior to the date thereof; or (b) a statement in

writing signed by his or her parent, or guardian if such child or person be a minor, or by himself in other cases, stating that such parent or guardian or person is conscientiously opposed to the practice of vaccination, and will not consent to the vaccination of such child or person; or (c) a certificate of a duly licensed and practicing physician, stating that the physical condition of such child or person is, at the time, such that vaccination would seriously endanger the life or health of such child or person. The act further provides that any child or person failing, neglecting, or refusing to file either the certificate showing successful vaccination within the prescribed period, or the statement or certificate required to work an exemption of the child from the requirement of vaccination, shall be excluded from admission to the institution until he or she complies with the law.

The appellant, having presented to the authorities in charge of the university the statement of his parents in proper form to the effect that they were conscientiously opposed to the practice of vaccination and would not consent to his vaccination, insists that he thereby, being otherwise qualified, became entitled to admission to the university, and is now entitled to a writ of mandate to compel his enrollment as a student therein.

The respondents oppose this contention of the appellant upon several grounds:

1. That the board of regents of the University of California have been invested by the constitution and statutes governing its foundation and control with full power over the matter of the admission of students to the university, and with exclusive authority to make and enforce rules for its government, and to prescribe the terms upon which students may exercise the right to enter or be enrolled therein; and that the power and authority with which the regents are thus invested is independent of legislative action and is not subject to legislative control; that in the exercise of this power and authority the board of regents have adopted a rule that no person shall be admitted or enrolled as a student in the university unless he shall either produce satisfactory evidence that he has been successfully vaccinated

within the period of seven years next preceding his application for admission; or else that he be vaccinated.

2. That the act of 1911, in so far as it attempts to interfere with the power and authority with which the regents of the university are thus invested, or with the rule, which they have adopted, is inoperative as to them, for the reason that it is not in that respect a health regulation; and

3. That the act of 1911, in that it undertakes to exempt those persons who are conscientiously opposed to vaccination from the other requirements of the act, is not a general law, and hence is unconstitutional and void.

We shall consider these several contentions in the order of their presentation.

The University of California looks for its foundation as a state institution to the act of the legislature of March 23, 1868, entitled "An act to create and organize the University of California" (Stats. 1867–8, p. 248). By the provisions of this act the university was established and declared to be under the charge and control of a board of directors to be known and styled the Regents of the University of California; and to this body was intrusted the general government and superintendence of the institution, with the power to prescribe rules for its government and to fix the qualifications for the admission of students thereto. The act also provided that "Any resident of California, of the age of 14 years or upwards, of approved moral character, shall have the right to enter himself in the university as a student at large . . . on such terms as the board of regents may prescribe." The act of 1868 was subjected to one unimportant amendment in 1871-2, and the general subject and terms of the act were carried into the Political Code adopted in 1872, where they remain without material change as to the matters involved in this inquiry, to the present time. (Pol. Code, secs. 1385 to 1477.) By the constitution of 1879 the University of California was raised to the dignity of a constitutional department or function of the state government, by the provisions of section 9 of article IX thereof, which read as follows:

"Sec. 9. The University of California shall constitute a public trust, and its organization and government shall be perpetually continued in the form and character prescribed

by the Organic Act creating the same passed March twenty-
third 1868 (and the several acts amendatory thereof), sub-
ject only to such legislative control as may be necessary to
insure compliance with the terms of its endowments and the
proper investment and security of its funds.''

Whether or not the framers of the constitution intended
by the terms of the above section that the Organic Act of
1868, and the substance of that act as embraced in the Political
Code adopted in 1872, and in being when the constitution
was framed, were to be so far read into the constitution itself
as to place the university thereafter, in respect to the de-
tails of its internal government, beyond all future legis-
lative interference or control, it is not necessary at this time
to determine; but it would seem to be very plain that it was
the intention of the framers of the constitution to invest the
board of regents with a larger degree of independence and
discretion in respect to these matters than is usually held to
exist in such inferior boards and commissions as are solely
the subjects of legislative creation and control. This would
seems to be a necessary conclusion from the fact of the eleva-
tion of the university to the place and dignity of a constitu-
tional department of the body politic, and from the express
terms of the constitution itself to the effect that its organiza-
tion and government should be perpetually continued in the
form and character prescribed by the act of its foundation,
and that in those respects it should not be subject to legis-
lative control. The investment of the authorities of the
university with this amplitude of power and discretion in the
management of its affairs must be held to include the power
to make reasonable rules and regulations relating to the
health of its students, and especially to make and enforce
such reasonable regulations as would tend to prevent the in-
troduction and spread of contagious disorders amongst the
student body. In the making of such rules and regulations
they might doubtless adopt whatever preventive means had
met the approval of medical science and experience. The
practice of vaccination as a means of preventing the infec-
tion and spread of smallpox has had the approval of both
science and experience for more than a century in the old
world and in the older states of our Republic, and has been
an improved method of inoculation for more than sixty years

in the state of California, as will appear from our legislation on the subject dating as far back as 1852. In the absence of any express legislative action looking to the adoption of a general law, requiring vaccination as a condition of admission to a public educational institution, we think it undeniable that the board of regents had the right to make and enforce a reasonable rule upon that subject.

That the foregoing rule which the board of regents did adopt and are still seeking to enforce, is a reasonable rule, would seem to have been determined by the supreme court and the appellate courts of this state with respect to a similar rule enacted by the state legislature in 1889, and which has been passed upon approvingly in the following cases: *Abeel* v. *Clark,* 84 Cal. 226, [24 Pac. 383]; *French* v. *Davidson,* 143 Cal. 658, [77 Pac. 663]; *State Board of Health* v. *Board of Trustees,* 13 Cal. App. 514, [110 Pac. 137]. In the leading case of *Abeel* v. *Clark,* the language of the supreme court is enlightening and instructive upon the point under present consideration. The court says:

"The act referred to is designed to prevent the dissemination of what, notwithstanding all that medical science has done to reduce its severity, still remains a highly contagious and much dreaded disease. While vaccination may not be the best and safest preventive possible, experience and observation—the test of value of such discoveries dating from the year 1796, when Jenner disclosed it to the world—have proved it to be the best method known to medical science to lessen the liability to infection with the disease. This being so, it seems highly proper that the spread of smallpox through public schools should be prevented and lessened by vaccination, thus affording protection both to the scholars and to the community."

In the light of this long held attitude of the law toward the practice of vaccination as a preventive of smallpox, we are of the opinion that the board of regents of the University of California had power to adopt and enforce the rule requiring vaccination as a prerequisite to the admission of a student to the university, in the absence of legislation lawfully limiting the exercise of that power.

This brings us to the question as to what, if any, power remains with the legislature to pass laws controlling the matter

of the admission of students to the University of California, or limiting the operation of a rule of the regents of the university with respect to the terms of admission of students thereto, in the light of the foregoing provision of the constitution that as to such matters the authorities in charge of the university shall not be subject to legislative control.

It is undoubtedly true, as conceded by the respondents, that there are certain subjects affecting the general welfare over which the legislature has been wisely invested with ultimate control. These subjects are those embraced within the general police powers of the state; and among them is the subject of the general health. It is admitted that over this subject the state legislature has the ultimate control; and that in the exercise of that control it has power to pass general laws, in the nature of health regulations, upon the subject of vaccination prescribing the extent to which persons seeking entrance as students in educational institutions within the state must submit to its requirements as a condition of their admission; and it is also conceded by the respondents that in so far as such an act of the legislature comes within the definition of a general law, and as such also comes within the general police powers of the state as a health regulation, the rules and regulations of the board of regents of the university must give way before it.

The appellant herein contends that the act of the legislature of 1911 relating to vaccination is such a law. The respondents contend that the act of 1911, in so far as it provides for the general vaccination of those seeking admission as students in educational institutions, is a re-enactment of the rule of the university, and hence that the appellant is not aided by it; but that in so far as it undertakes to provide that those persons, seeking admission to educational institutions, who aver themselves to be conscientiously opposed to vaccination, need not comply with the provisions of the act requiring vaccination, it is not a health regulation; and hence that the authorities in charge of the university are not subject to its control. The respondents further contend that the act of 1911, in that it contains the aforesaid exemption, is not a general law, and is therefore unconstitutional and void.

As has been heretofore seen, the state of California stands committed to the policy of requiring vaccination as the best

23 Cal. App.—40

preventive means known to medical science for lessening the liability to infection with a dreaded and dangerous disease. The act of 1889 upon that subject was entitled "An act to encourage and provide for a general vaccination in the state of California"; and the act of 1911, which replaces the former act, is also entitled "An act to encourage and provide for a general vaccination for all public and private schools of California, etc." If, as the titles of these two acts indicate, it is the policy of the state of California to encourage and provide for a general vaccination as the most effective method known to medical science for preventing the spread of an infectious and dangerous disease, and as such is a reasonable and proper health regulation, how can a provision of the law be also held to be a health regulation which exempts from vaccination all those who are conscientiously opposed to that means of prevention? Vaccination is a surgical operation and medical treatment addressed to the physical system of the individual patient, and effectuating his inoculation from the contagious disease of smallpox, without regard, so far as medical science teaches, to the mental attitude of the patient toward the law requiring submission to it, and more certainly regardless of what the mental attitude of his parents or guardians may be. It would rather seem to be the very opposite of a health regulation for a law, whose title declares its purpose to be "To encourage and provide for a general vaccination," to have embraced within it a proviso exempting from such vaccination those whose mental attitude is that of opposition to the avowed object of the law. To take an extreme illustration: Suppose that a law, requiring the quarantine of persons actually afflicted with smallpox, should contain a proviso exempting from its operation those who should declare themselves conscientiously opposed to being quarantined, would such an exemption be valid as a health regulation? Clearly not. The object and effect of such an exemption in such case, as in this, would be to defeat the very intent of the law itself, by an exception, not founded upon considerations of health, destroying that generality within the sphere of its operation which would be essential to its effectiveness as a health regulation. In our opinion, therefore, the provision of the act of 1911, which seeks to exempt those persons who are conscientiously opposed to the

practice of vaccination from the operation of the law, otherwise general in its terms, requiring vaccination of persons seeking admission to educational institutions, is not in the nature of a health regulation; and that, not being so, it is not such a proviso as would come within the general police powers with which the legislature is invested; and hence that it cannot be availed of by those seeking enrollment in the University of California to nullify and avoid the operation and effect of the existing rule of the authorities of the university upon the subject of vaccination.

These views make it unnecessary in this case to decide whether the act of 1911, considered in its entirety and with reference to its effect upon other educational institutions which do not stand in the same relation to it or to the state as the University of California, and which are not before the court, is or is not a general law.

The judgment is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.