[Civ. No. 5600.   Third Appellate District.—July 9, 1936.]

CHAS. R. PENNINGTON, Petitioner, v. WILLIAM G. BONELLI, as Director of the Department of Professional and Vocational Standards, etc., Respondent.

318

H. Boyarsky and Emile Grossman for Petitioner.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—By this petition for a writ of mandate petitioner seeks to compel respondent to issue to petitioner a renewal certificate of registration as an optometrist.

It appears that Charles R. Pennington became a duly registered optometrist in 1923, and as evidence of that fact there was issued to him by the state board of examiners in optometry a certificate of registration, and each year thereafter, upon the payment of the fee therefor, there has been issued to petitioner a renewal of said registration certificate.

In 1935 the optometry law (Stats. of 1913, chap. 598) was amended by chapter 604 of the Statutes of 1935. Section 7 of this amended act provides, among other things, that each registered optometrist should annually pay to the Director of the Department of Professional and Vocational Standards a fee of $12 for a renewal certificate, and the failure to pay such license shall *ipso facto* work a forfeiture of the license which would then be restored only upon certain terms and conditions. The law also provides that from each annual renewal license fee of $12 there shall be paid to the University of California by the Director of Professional and Vocational Standards, the sum of $8 to be used by the University of California solely for the advancement of optometrical research, and the balance of such renewal fee to be paid into the state treasury.

When the annual renewal license fee for 1936 became due, petitioner herein paid to respondent, as Director of the Department of Professional and Vocational Standards, the sum of $4 and demanded that he be issued a renewal certificate for the year 1936. This respondent refused to do, and petitioner seeks by this writ to compel the issuance to him of such renewal.

In support of his contention that all over and above the $4 which is paid into the state treasury is illegal, petitioner contends that the exaction of $8 for the support of the department of optometry of the University of California is an exercise of the taxing power of the state and not of the police power; that it is a violation of the state and federal Constitutions in that it denies to petitioner due process and equal protection of the law, and also further violates the Constitution of the state of California in that it makes an arbitrary discrimination between persons and classes of persons similarly situated, and lastly that it violates the state Constitution in that the optometry law embraces more than one subject.

The practice of optometry is defined in section 2 of the act to be "the employment of any means other than the use of drugs for the measurement of the powers or range of human vision or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general or the adaptation of lenses or frames for the aid thereof".

The error of petitioner herein is that he considers and refers to the science of optometry as the "business" of optometry, and that the license fee of $12 is imposed as a tax for revenue purposes, and that such license fee, being imposed upon a business, is limited to the amount necessary for licensing, including reasonable compensation for supervision over the particular industry.

There can be no question but what the practice of optometry is more than a business. It is a profession relating to the public health, and as such is peculiarly subject to state control. As was said in *Ex parte Whitely,* 144 Cal. 167 [77 Pac. 879, 1 Ann. Cas. 13], where the court was considering the right of one to engage in the practice of dentistry:

"It is not questioned by counsel for petitioner but that the state has the right to regulate the practice of dentistry; to provide measures for the protection of the public against the incompetency and ignorance of those who, while they would assume the duties and responsibilities of that profession, are yet unfitted and unqualified to discharge them.

"In fact, it must be conceded that it is a common and valid exercise of legislative power to prescribe regulations under which only those persons possessing proper qualifications shall

be admitted to the practice of any profession or calling requiring special skill.

"This right of legislation is always recognized as a salutary and wise exercise of the police power of the state for the protection and safety of the public against unskillful and incompetent persons."

In *Patrick* v. *Riley*, 209 Cal. 350 [287 Pac. 455], it is said:

"It is a well recognized principle that it is one of the first duties of a state to take all necessary steps for the promotion and protection of the health and comfort of its inhabitants. The preservation of the public health is universally conceded to be one of the duties devolving upon the state as a sovereignty and whatever reasonably tends to preserve the public health, is a subject upon which the legislature within its police power may take notice. . . .

"That the act here in question (Bovine Tuberculosis Law) was enacted for a public purpose is beyond question, and being a law for the suppression of disease and the promotion of public health, it should be given a broad and liberal construction that it may accomplish the purpose intended in enacting it. . . . In construing such an act, the courts must presume that the legislature has carefully investigated and has properly determined that the interests of the public require legislation that will insure the public safety and the public health against threatened danger from diseased animals. The determination of that fact is the province of the legislature, and not of the courts. It is also the province of the legislature, in the exercise of a sound discretion, to determine what measures are necessary for the protection of such interests."

█ The regulation of such activities is not for the benefit of the licensee but for the protection of the state, and therefore the legislature in the exercise of its police power may impose such proper restrictions as it deems necessary for the protection of the public.

█ The right to practice a learned profession comes from the state and is held subject to conditions imposed by the state and may be taken away for noncompliance with such conditions. One of the conditions imposed by the state upon the right of one to continue the practice of optometry is that he pay $12 annually for the right so to do, and he may either

accept or reject the state's offer. If he rejects the offer, however, he may not be permitted to continue in his profession.

█ The disposition of the proceeds from the license fees from optometrists is a concern of the legislature and not of the members of the optometrical profession, and therefore an optometrist has no greater right to inquire into what the state may do with money collected by it than any other interested person, and that inquiry must be through the legislature. █ That body, being vested with authority to determine the method whereby optometry may be best regulated and the public interest protected, having concluded that such public interest may be best served by the maintenance and support of a department of optometry at the University of California, a branch of the state itself (*Williams* v. *Wheeler,* 23 Cal. App. 619 [138 Pac. 937], its action is now not subject to review by the court.

Petitioner relies strongly upon the case of *American Fertilizing Co.* v. *Board of Agriculture,* 43 Fed. 609 [11 L. R. A. 179], where the constitutionality of an act imposing an annual privilege tax of $500 upon the manufacture and importation of fertilizers and providing that from the proceeds of said taxes there be apportioned a certain sum to the North Carolina Industrial Association, another amount to the department of agriculture for the completion of an oyster survey, and the balance of the revenue from the taxes for the establishment of an agricultural college, was held unconstitutional. This finding was based on the ground that it was a tax and in excess of what was required for the purpose of regulation.

Petitioner also cites the case of *Ellis* v. *Frazier,* 38 Or. 462 [63 Pac. 642, 53 L. R. A. 454], which involved a judgment imposing an annual license tax of $1.25 on bicycles, the statute providing that of said sum, twenty-five cents was to be retained by the license collector while $1 was to go into a fund for the construction of bicycle paths. The court held the act unconstitutional in that the fee was in excess of what was required for regulation.

As mentioned above, optometry is not a business and is not an article of commerce, but a profession dealing with the health and well-being of the people, and should be and is governed and controlled by regulations entirely unnecessary to apply to merchandise.

The second point urged by petitioner is that the act is unconstitutional in that the title embraces more than one subject. The title provides, ''An act to regulate the practice of optometry; to provide for the appointment of a board of optometry, define its duties and powers and prescribing a penalty for the violation of this act.'' The body of the act provides for the payment of $12, ''for a renewal of his registration certificate''. In *State ex rel. Smith* v. *Board of Dental Examiners,* 31 Wash. 492 [72 Pac. 110], it was held, ''The subject of an act being to regulate the practice of a given profession, the legislature may include in the act the means relating to the subject for effecting the object sought.'' Therefore it may be fairly stated that the act in question having for its express purpose the regulation of the practice, the subject of registration is embraced within the title. (*Ex parte Whitley, supra; County of Los Angeles* v. *Spencer,* 126 Cal. 670 [59 Pac. 202, 77 Am. St. Rep. 217]; *Ex parte Hallowell,* 155 Cal. 112 [99 Pac. 490]; *In the Matter of Victor,* 27 Cal. App. 73 [148 Pac. 975].)

We believe the foregoing disposes of the principal points urged by petitioner, and the writ should be and is therefore denied.

Thompson, J., concurred.