432 F.2d 493
 Charles SELLERS, Richard Strohman and Bruce Kirmmse,
individually and as members of the Campus Draft
Opposition, on behalf of themselves and
others similarly situated, Appellants,
v.
The REGENTS OF the UNIVERSITY OF CALIFORNIA, a corporation, Appellee.
 No. 23581.
 United States Court of Appeals, Ninth Circuit.
 Sept. 17, 1970.
 
 Paul N. Halvonik (argued), Marshall W. Krause, A.C.L.U., San Francisco, Cal., for appellants.
 Donald L. Reidhaar (argued), Thomas J. Cunningham, Wm. H. McKenzie, Berkeley, Cal., for appellee.
 Jan Vtter, Albert M. Bendich, Berkeley, Cal., amicus curiae.
 Before KILKENNY and TRASK, Circuit Judges, and FERGUSON, District judge.*
 KILKENNY, Circuit Judge:
 
 
 1
 Appellants appeal from an order of the district court dismissing their complaint. Appellee is a corporation authorized, formed and existing under the Constitution of the State of California.[1] We treat the dismissal as a summary judgment under Rule 56, FRCivP.
 
 
 2
 The facts alleged in appellants' complaint, amended complaint and supporting affidavits are essentially undisputed. Appellants are members of a campus organization of the University of California, known as Campus Draft Opposition (CDO). On February 26, 1968, they applied, through proper channels, for the use of the GREEK THEATRE, a building on the Berkeley campus, for the purpose of holding an assembly on May 17, 1968. The proposed program was entitled 'Vietnam Commencement,' and was initiated for the purpose of honoring young men who had taken a pledge not to serve in the armed forces during the Vietnam conflict. On March 4, 1968, an authorized officer of the University informed appellants that the proposed use of the building had been approved subject to three conditions: (1) that the use comply with the established requirements; (2) that appellants make clear through their publicity that the event was not sponsored or approved by the University; and (3) that the appellants' use of the facility would not be illegal.
 
 
 3
 Concerned with the legality of the proposed assembly, the officials of the University desired a formal opinion and submitted the problem to the general counsel of the appellee. He was of the opinion that the proposed use of the building would be in violation of 50 U.S.C. App. 462(a),[2] and he so advised the University officials in charge. Likewise, it was the opinion of the general counsel that the proposed function would be in conflict with appellee's resolution of October 20, 1967, which provides:
 
 
 4
 'University facilities shall not be used for the purpose of organizing or carrying out unlawful activity.'Subsequently, appellants submitted another application in which they assured the authorities that the proposed event would avoid mimicking the official University commencement and would be publicized in such a manner so as to make clear that it was not a University sponsored function. This application contained the following language: 'Through our registration form, in our continuing daily activity on campus, and in formulating our plans for the Vietnam Commencement, we have repeatedly demonstrated our intention not to act outside the law.'
 
 
 5
 The second application was submitted to the general counsel who reiterated his opinion that the proposed event would violate the law.[3]
 
 
 6
 The Chancellor, acting on the advice of the general counsel, denied appellants the use of the theatre. Appellants appealed to appellee. Acting on the opinion of its general counsel, appellee affirmed the decision of the Chancellor.
 
 
 7
 Appellants, on May 9, 1968, filed a complaint in the lower court seeking an injunction, declaratory judgment and damages. They alleged that the action of appellee abridged their constitutional rights to freedom of speech and assembly and equal protection of the laws. On May 16th, a district judge denied a preliminary injunction on the ground that appellants failed to show either that irreparable harm was threatened or that appellee's action was not reasonably justified by the valid interest of the University in maintaining order and decorum on its campus.
 
 
 8
 To forestall mootness, appellants then filed an amended complaint alleging that they would continue their activities as members of the CDO and that appellee would continue to rely upon the resolution of October 20, 1967, and 50 U.S.C. App. 462(a), to deny them full freedom of speech and assembly. Additionally, they allege that the resolution was unconstitutional in that it was overbroad, vague and failed to provide adequate procedural safeguards for the protection of First Amendment rights. They also alleged that appellee acted unreasonably in denying them the use of the Greek Theatre. In this complaint, appellants sought the convention of a three-judge court, an injunction against the enforcement of the resolution and 462(a) and a declaratory judgment that the resolution and the statute were unconstitutional on their face, or as applied. Damages were sought under the provisions of 42 U.S.C. 1983.
 
 
 9
 After affidavits had been submitted by both sides and appellants had declined the opportunity to further amend their complaint, a single district judge dismissed the complaint pursuant to appellee's motion. Our jurisdiction to hear the appeal is not questioned. Wilson v. City of Port Lavaca, 391 U.S. 352, 88 S.Ct. 1743, 20 L.Ed.2d 636 (1968); Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967).
 
 
 10
 Treating the dismissal of the district court as a summary judgment under Rule 56, FRCivP, we affirm the judgment, although not necessarily on the grounds on which the lower court relied. This is our prerogative. Jaffke v. Dunham, Trustee, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); M.O.S. Corp. v. John I. Haas Co., 375 F.2d 614, 617 (9th Cir. 1967); Rizal Commercial Banking v. Putnam, 429 F.2d 1112 (9th Cir., July 10, 1970).
 
 
 11
 Presented for decision are two basic issues: (1) did the lower court err in failing to convene a three-judge court to consider the constitutionality of that portion of 50 U.S.C. App. 462(a) which prohibits the counseling, aiding or abetting of another to refuse registration or service in the Armed Forces and, (2) did the lower court err in failing to convene a three-judge court to consider the constitutionality of the resolution promulgated by appellee.
 
 
 12
 ( 1) 28 U.S.C. 2282 prohibits an injunction restraining the enforcement of an Act of Congress unless the application therefor is heard and determined by a district court of three judges. In this case, however, there is no threat of enforcement of 462(a). Appellee is powerless to enforce it and there is no showing that federal authorities have any intention of prosecuting appellants under its terms. For that matter, no one with power to enforce the provisions of 462(a) is a party to this proceeding. Consequently, on the record before us, an injunction against enforcement of that section is not proper. Congress of Racial Equality v. Douglas, 318 F.2d 95 (5th Cir. 1963); New Standard Publishing Co. v. Federal Trade Commission, 194 F.2d 181 (4th Cir. 1952). Moreover, the prime prerequisite of injunctive relief, the threat of irreparable future harm that might be caused by enforcement of 462(a), is totally lacking. That statute is only collaterally involved and no threat or fear of prosecution under its terms is alleged. Cameron v. Johnson,390 U.S. 611, 619-620, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).
 
 
 13
 ( 2) We now approach appellants' claim for injunctive relief under28 U.S.C. 2281.[4] Assuming, arguendo, that the appellee's resolution, which is applicable to nine state university campuses throughout California, is of statewide application and thus qualifies under the terms of 2281 as construed in Sailors v. Board of Education of Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); Gilmore v. Lynch, 400 F.2d 228 (9th Cir. 1968); and Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962), we are still at a loss to find a basis for injunctive relief on this record. Appellants, for some time, had been actively pushing their program on the campus. They had circulated form pledges which would require the signer to promise that he would refuse to serve in the military on the grounds of moral objection to the war in Vietnam. They had publicized other pledges offering support in the form of 'encouragement, counsel, and financial aid' to those signing the pledge. These, and other activities, had taken place openly after the passage of the resolution, but no one interfered with appellants' activities. They allege that they will continue such activities, but do not allege that any event similar to the Vietnam Commencement is planned for the future. In these circumstances, it is impossible to find a threat of irreparable harm, nor can we find any 'chilling effect' upon First Amendment rights. This is true since the only threatened penalty, should some future unspecified event be found in violation of the resolution, would be the denial of the use of campus facilities.
 
 
 14
 In the light of this factual background, we hold that a remand for consideration by a three-judge court would be a misuse of the judicial function and an action which would be beyond the requirements of the statutes or the policy behind them. Time and time again the Supreme Court has warned us that the three-judge court legislation is to be narrowly construed. Mitchell v. Donovan, 90 S.Ct. 1763 (June 15, 1970); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). The statute was patterned to prevent the possibility of a single judge bringing to a halt the application of the legislative process. Its purpose is the protection of the legislative branch from judicial interference. Goldstein v. Cox, 396 U.S. 471, 476-477, 90 S.Ct. 671, 24 L.Ed.2d 663 (1970); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).
 
 
 15
 Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), fixes three guidelines for district judges to follow in deciding whether to ask for the convention of a three-judge court. They are: (1) whether the constitutional question raised is substantial; (2) whether the complaint at least formally alleges the basis for equitable relief; and (3) whether the case presented otherwise comes within the requirements of the three-judge statute. Assuming, without deciding, that a substantial constitutional question has been raised, we, nevertheless, hold that the second requirement has not been met. The total lack of party jurisdiction of the district court to grant the injunctive relief as to 462(a) and the inappropriateness of an injunction under the facts alleged concerning appellee's resolution justified the dismissal by the district judge.
 
 
 16
 The statutes under scrutiny are applicable only when injunctive relief is at issue. Three-judge courts are not required to grant declaratory judgments. Mitchell v. Donovan, supra; Rockefeller v. Catholic Medical Center, 397 U.S. 820, 90 S.Ct. 1517, 25 L.Ed.2d 806 (1970); Goldstein v. Cox, supra; Kennedy v. Mendoza-Martinez, supra. Kennedy is instructive. There, the plaintiff amended his complaint late in the proceedings to add a prayer for injunctive relief to his request for a declaratory judgment. The Supreme Court held that, since the district judge decided the case solely on the issue of the declaratory judgment and did not regard the prayer for injunctive relief as material to the disposition of the case, there was no need for a three-judge court. Here, although the court dealt with the injunction issue, the pleadings and affidavits are insufficient to state a claim for injunctive relief.
 
 
 17
 On the record as a whole, we hold that the district judge properly refused to request the convention of a three-judge court. To hold otherwise would impart magical powers to the word 'injunction' by allowing the word itself to force the convention of a three-judge court without reference to the adequacy of the supporting allegations. Since there was no threat of irreparable harm and no chilling effect on First Amendment rights, Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), injunctive relief was properly denied.
 
 
 18
 Normally, having decided the appeal on other grounds, we would not speak to the constitutionality of the appellee's resolution. Here, however, the issue has been exhaustively briefed and ably argued and, since there is a likelihood of the case reaching the Supreme Court, we feel we should express our views on the issue. For proper construction, the resolution must be placed under the searchlight of the entire regulatory scheme of the University, including the resolution enacted on the same day stating that: 'The advocacy and content of speech at University facilities cannot and shall not be restricted beyond the purview of the First and Fourteenth Amendments to the Constitution.' Placed in this light, the questioned resolution is clearly aimed at activities, as distinguished from pure speech. Beyond doubt, appellee in its role as administrator of the University system has a vital interest in preventing illegal activity on the campus. Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966).
 
 
 19
 The resolution, as we read it, is neither overbroad in terms of appellee's valid interest in the affairs of the University, nor is it so vague that 'men of common intelligence must necessarily guess at its meaning and differ as to its application.' Baggett v. Bullitt, 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377 (1964). As stated in Adderley v. Florida,385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966), 'The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.' Here, appellee in the exercise of its power to govern the University and in pursuit of a valid interest in that area, at most, has only incidentally infringed on First Amendment freedoms. Such being the case, the regulation is not constitutionally infirm. Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). Moreover, any chilling effect on this particular form of protest that might flow from a good faith enforcement of this regulation would not constitute an impermissible invasion of protected freedoms. Cameron v. Johnson, 390 U.S. 611, 619, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Additionally, we must recognize that First Amendment rights are not absolute. Regulation as to time, place, and manner of the exercise of such rights is proper when reasonably related to a valid public interest. Callison v. United States, 413 F.2d 133 (9th Cir. 1969). We are not here concerned with a regulation prohibiting speakers from using the campus, nor with one which forbids any particular type of political activity. At most, the regulation as here applied has only an incidental effect on First Amendment rights. Its primary goal is the maintenance of order and decorum on the campus. The resolution involves no threat of criminal or other sanction, save the denial of the use of University facilities. It does not threaten freedom of activity or speech in the home or in a privately owned business and consequently there is no analogy to statutes regulating 'obscenity.'
 
 
 20
 Having held that the resolution is not unconstitutional on its face, we now hold that it was not unconstitutionally applied by appellee. The record before us supports the holding that appellee acted reasonably in deciding that the proposed event, which included speeches and fund raising in support of men who had pledged not to serve in the Armed Forces, would be a violation of 462(a). It acted on the advice of its counsel. His opinion that the proposed commencement would violate the statute was not unreasonable. As recently as July 11, 1969, the First Circuit has said that 462(a) is neither vague or overbroad. United States v. Spock, 416 F.2d 165, 173, n. 20 (1st Cir. 1969). Inasmuch as appellee reasonably believed that such a program would in itself be illegal, its valid interest in prohibiting illegal activity was immediately threatened by the proposal. We need not go beyond saying that appellee acted reasonably. We express no opinion on the actual applicability of 462(a) or on its constitutionality. In arriving at this conclusion, we reject the appellants' contention that the standards for immediate de novo judicial review required in censorship of 'obscenity' cases should here apply. Compare Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968); Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). It is our considered opinion that the judicial function, as applied to those in charge of governing the campuses of our universities, should be far less inclusive than the role played by the courts in review of state censorship of an 'obscenity,' a censorship that reaches into private homes and businesses.
 
 
 21
 Aside from the three-judge court issue, appellants' pleadings may raise issues under the Declaratory Judgments Act,[5] or the Civil Rights Act,[6] or both. These issues are not presented in appellants' brief.
 
 
 22
 The belief that the Declaratory Judgments Act broadens the scope of the court's jurisdiction is without foundation. The essential jurisdictional requirements 'of sufficient immediacy and reality' remain. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The 'controversy' must exist at the time of the hearing as to the availability of declaratory relief and that determination is entirely independent of any controversy that may have existed in the past. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). For that matter, declaratory relief cannot be granted where the alleged controversy is hypothetical. Golden v. Zwickler, supra; United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Appellants here are in no present danger due to their having run afoul of the resolution, nor do they allege that they plan to hold an event similar to their 'Vietnam Commencement' in the future. As in Mitchell, we can only speculate as to the type of future activity in which CDO will engage. Search as we may, we can find no cause or controversy of sufficient immediacy or definiteness existing at the time of the district court's decision to warrant a declaratory judgment.
 
 
 23
 Nor do we believe that the Civil Rights Act applies in this factual atmosphere. We draw attention to the fact that the action is being prosecuted against The Regents of the University of California, a corporation. The appellee is a corporation created by the Constitution of the State of California. As such, it is not a proper party since it is not a 'person' within the meaning of 42 U.S.C. 1983. Bennett v. People of the State of California, 406 F.2d 36, 39 (9th Cir. 1969), cert. denied 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969); Allison v. California Adult Authority, 419 F.2d 822 (9th Cir. 1969); Clark v. Washington, 366 F.2d 678, 681 (9th Cir. 1966).
 
 
 24
 Finding no error, we affirm.
 
 
 25
 FERGUSON, District Judge (dissenting and concurring):
 
 
 26
 This case presents the jurisdictional issue of whether or not a single judge district court may grant summary judgment on the merits in an action seeking to enjoin the enforcement of a statewide administrative order pursuant to 28 U.S.C. 2281. Following the teaching of the Supreme Court, I must hold that such decision rests exclusively in a statutory three-judge district court constituted pursuant to 28 U.S.C. 2284, and I therefore dissent.
 
 
 27
 I concur, however, in the majority opinion which affirms the district court in that part of the action which seeks to enjoin the enforcement of the anti-counseling section of the Selective Service Act.
 
 
 28
 On May 9, 1968, appellants filed their complaint in the district court alleging in substance:
 
 
 29
 1. They are members of an unincorporated association at the University of California at Berkeley known as Campus Draft Opposition, a recognized and registered campus organization composed of a large number of students and faculty.
 
 
 30
 2. Prior thereto, the appellee Regents had adopted the following resolution:
 
 A.
 
 31
 'University facilities shall not be used for the purpose of organizing or carrying out unlawful activity.
 
 B.
 
 32
 'The advocacy and content of speech at University facilities cannot and shall not be restricted beyond the purview of the First and Fourteenth Amendments to the Constitution.'
 
 
 33
 3. The purpose of the Campus Draft Opposition is to provide support for young men who, for reasons of conscience, believe that the actions of the United States in Vietnam are unjust and immoral and who therefore cannot participate in the Armed Forces.
 
 
 34
 4. On February 26, 1968, appellants applied for use of the Greek Theatre on the Berkeley Campus for the purpose of presenting a 'Vietnam Commencement' on May 17, 1968. The purpose of the program was to honor those young men who had taken a position favored by the association concerning services in the Armed Forces.
 
 
 35
 5. On March 4, 1968, the University Administration approved the use of the facility subject to the conditions that (a) its use comply with established standard requirements, (b) the association make it clear that the event was not sponsored or approved by the University, and (c) the planned use was not illegal.
 
 
 36
 6. In order to obtain an opinion in regard to the third condition (no illegal use), the matter was referred to the General Counsel of the University. He concluded that the 'Vietnam Commencement' event would result in a violation of 50 U.S.C. App. 462(a), the anti-counseling section of the Selective Service Act, and therefore would not be consistent with Part A of the Regents' Resolution.
 
 
 37
 7. Appellants resubmitted their application, stating that there was no intent to act outside the law, and set forth that it would stress the fact that the program was not sponsored by the University, the ceremony would deliberately avoid mimicking any official ceremony, there would be no academic procession or presenting of 'honorary degrees,' there would be no fund raising, and all janitorial and police services would be in accordance with university regulations.
 
 
 38
 8. The featured speaker was to be Dr. Robert M. Hutchins, former President of the University of Chicago and now Director of the Center For the Study of Democratic Institutions.
 
 
 39
 9. The General Counsel was again asked for his opinion. The request was accompanied by a written opinion of five professors of law at the Law School, which concluded that appellants' planned activities in the Greek Theatre would not be in violation of the law.
 
 
 40
 10. Again, the General Counsel determined that in his opinion the 'very nature of the proposed event, with these central aspects of honoring and pledging assistance (to draft eligible men who have signed a pledge of refusal to serve in the Armed Forces), is such as to counsel, aid or abet draft eligible men to refuse induction.' The Administration, therefore, denied the request for the assembly.
 
 
 41
 11. The administrative denial was appealed to the Regents. On April 19, 1968, the Regents adopted the following order, fourteen in favor, three opposed and two not voting:
 
 
 42
 'After giving full consideration to the appeal and material submitted in support of it (Viet Nam Commencement) and the opinion of the general counsel that violations of law will occur in the course of the event if held as proposed, and it appearing that because of the history and format of the proposed 'commencement' it would be widely regarded as being a University ceremony if held on the campus, it is the determination of the Regents that permission should not be granted for the holding of the proposed 'Viet Nam Commencement.' 'For these reasons, The Regents hereby deny the appeal of the Campus Draft Opposition.'
 
 
 43
 12. The Greek Theatre is a large outdoor amphitheater seating 10,000 persons. The facility is not reserved exclusively for university-sponsored events but is frequently used for political speeches and rallies, and had recently been used for a rally supporting 'Black Power.'
 
 
 44
 13. The facilities of the University of California are frequently and regularly used by registered campus organizations for meetings expressing political points of view on the war in Vietnam as well as numerous other political subjects. The Campus Draft Opposition has itself used campus facilities on numerous occasions for promulgation of its program after complying with all applicable administrative requirements for such activities on the Berkeley campus.
 
 
 45
 14. A ceremony honoring persons who state they will decline to serve in the Armed Forces does not violate 50 U.S.C. App. 462(a) nor any other law.
 
 
 46
 15. The denial of the use of the Greek Theatre for the reasons given abridges the appellants' federal rights to freedom of speech, association and assembly, as well as their rights under the equal protection clause of the Fourteenth Amendment.
 
 
 47
 Appellants then prayed for an injunction to restrain appellee from prohibiting the meeting of May 17, 1968, an order declaring that Part A of the Regents' Resolution is an unconstitutional prior restraint of free expression and assembly, and for monetary damages.
 
 
 48
 In support of and in opposition to a motion for a preliminary injunction, both sides filed affidavits and documentary evidence, and on May 16, 1968, a single judge district court denied appellants' request for a preliminary injunction. I set aside a detailed discussion whether such a matter must be determined by a statutory three-judge court. A single judge does not have jurisdiction to deny after a hearing a request for an interlocutory or preliminary injunction to restrain the enforcement of a state statute on the ground of unconstitutionality. Ex parte Metropolitan Water Co., 220 U.S. 539, 31 S.Ct. 600, 55 L.Ed. 575 (1911). Where a party seeks an injunction in a case which must be heard by a statutory three-judge district court, and the orderly course of pleading would include the filing of an application for the convening of such a court, the single district judge to whom the case is assigned has the duty to initiate the necessary procedure for setting up such a court, even though a request is not made therefor. Borden Co. v. Liddy, 309 F.2d 871 (8th Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977 (1963), and Bell v. Waterfront Comm'n of New York Harbor, 279 F.2d 853 (2d Cir. 1960).
 
 
 49
 On July 19, 1968, plaintiffs, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, filed an amendment to their complaint, contending:
 
 
 50
 (1) They plan to continue the activities of the Campus Draft Opposition during the academic year commencing in September of 1968 and as long as the compulsory draft under the Selective Service System continues to affect students, employees and faculty at the University of California.
 
 
 51
 (2) The defendants would continue to rely on 50 U.S.C. App. 462(a) to deny plaintiffs their full rights of freedom of expression and assembly.
 
 
 52
 (3) Part A of the Regents' Resolution is an unconstitutional prior restraint of freedom of speech and assembly on its face and as applied.
 
 
 53
 Appellants also requested that a three-judge district court be convened pursuant to 28 U.S.C. 2284 to enjoin the enforcement of the federal statute and Part A of the Regents' Resolution.
 
 
 54
 Appellee, thereupon, filed a motion to dismiss the action for failure to state a claim upon which relief can be granted, and to deny the request to convene a three-judge district court.
 
 
 55
 On September 25, 1968, the district court, relying on affidavits filed in the matter, dismissed the action on its merits and denied the request to convene a three-judge court. As stated in the majority opinion of this court, the dismissal was in effect a summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The district court found as facts: (a) the denial of permission to use the Greek Theatre was based on the alternative and independent ground that the planned program would be widely regarded as being a University ceremony if held on campus; (b) there was no present justiciable controversy involving the federal statute or the Regents' Resolution; (c) there was no substantial federal question presented in regard to either the statute or the resolution; (d) the Regents' Resolution was not a statewide statute of general application reviewable by a three-judge court under 28 U.S.C. 2281; (e) the defendants were not responsible for enforcing the federal statute and thus the case was not proper for a three-judge court pursuant to 28 U.S.C. 2282; (f) the complaint failed to state a claim upon which relief could be granted; (g) the denial of permission was a reasonable and lawful exercise of defendant's authority in governing the University of California; and (h) any incidental restrictions upon the exercise of First Amendment freedoms were fully justified by the valid and compelling interests of defendant giving rise to the denial of permission.
 
 
 56
 The single district court judge did not have jurisdiction to dismiss the complaint on its merits. Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), states, 'When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute.' 370 U.S., supra at 715, 82 S.Ct. at 1296.
 
 
 57
 The limited power of the single judge is specifically set forth in Stratton v. St. Louis S.W. Ry., 282 U.S. 10, at 15, 51 S.Ct. 8, 10, 75 L.Ed. 135 (1930):
 
 
 58
 'If an application for an interlocutory injunction is made and pressed to restrain the enforcement of a state statute, or of an administrative order made pursuant to a state statute, upon the ground that such enforcement would be in violation of the Federal Constitution, a single judge has no jurisdiction to entertain a motion to dismiss the bill on the merits. He is as much without power to dismiss the bill on the merits, as he would be to grant either an interlocutory or a permanent injunction. His authority is strictly limited to granting, upon proper cause being shown, a temporary restraining order to be effective only pending the determination of the application for an interlocutory injunction. Upon making such an order, it is his duty immediately to call two other judges, as the statute directs, to assist him in hearing and determining that application. Ex parte Northern Pacific Railway Company, 280 U.S. 142, 144 (50 S.Ct. 70, 74 L.Ed. 233).'
 
 
 59
 The University of California consists of nine state university campuses throughout California. It is administered pursuant to Article IX, Section 9, of the Constitution of the State of California by the appellee Regents of the University of California 'with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university and the security of its funds.'
 
 
 60
 A description of the functions and powers of the Regents is given in Ishimatsu v. Regents of University of California, 266 Cal.App.2d 854, 863-874, 72 Cal.Rptr. 756, 762-763 (1968), as follows:
 
 
 61
 'The authority and powers granted to the University are extensive. * * * The regents have been variously described as 'an institution of the state,' 'a public corporation,' and 'a governmental agency,' (Estate of Royer, supra, 123 Cal. 614, 619, 620, 56 P. 461); a 'public trust,' and 'a governmental institution,' (City Street Imp. Co. v. Regents etc., 153 Cal. 776, 777, 779, 96 P. 801 (18 L.R.A.N.S., 451)); 'a constitutional department or function of the state government,' (Williams v. Wheeler, 23 Cal.App. 619, 622, 138 P. 937); 'a governmental function.' (Davie v. Board of Regents, etc., 66 Cal.App. 693, 696, 227 P. 243); 'a state institution' (Estate of Purington, 199 Cal. 661, 666, 250 P. 657); and 'a branch of the state itself,' (Pennington v. Bonelli, 15 Cal.App.2d 316, 321, 59 P.2d 448). (See also 30 Ops. Atty.Gen. 162, 166; Newmarker v. Regents of Univ. of Calif., 160 Cal.App.2d 640, 324 P.2d 558.)
 
 
 62
 'The Attorney General, in commenting on the autonomy granted the regents, stated: '* * * It is a constitutional corporation or department and constitutes a branch of the state government equal and coordinate with the legislature, the judiciary and the executive. * * * The Regents, not the legislature, have the general rule-making or policymaking power in regard to the University. * * * It is clear, however, that the power of the Regents to operate, control and administer the university is virtually exclusive.' (30 Ops.Atty.Gen., 162, 166.)'
 
 
 63
 Appellee is therefore a statewide administrative agency, and its resolutions, policies and orders are within the operative effect of 28 U.S.C. 2281. Gilmore v. Lynch, 400 F.2d 228 (9th Cir. 1968); Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962); Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir. 1961).
 
 
 64
 While a single judge may not dismiss on its merits a case under 2281, he may dismiss if the complaint on its face does not present a substantial federal question. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The Supreme Court, in Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933), set forth the rule that: 'The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." This criterion was followed in California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).
 
 
 65
 The facts alleged in the original and amended complaints present a question that is not 'obviously without merit,' and there are 'no decisions of the Supreme Court which have foreclosed the subject.'
 
 
 66
 The complaint alleges that the challenged Regents' Resolution was and is used by the defendants as a prior restraint to prohibit a peaceful public assembly and to restrain plaintiffs' First Amendment rights. This is clear from the fact that the use of the Greek Theatre was approved by the Administration subject to the opinion of the General Counsel. The General Counsel ruled that the assembly would violate the resolution, and it was on that basis that the use of the Greek Theatre was denied.
 
 
 67
 The district court found that the use was denied on the alternate and independent ground that 'because of the history and format of the proposed 'Commencement,' it would be widely regarded as being a University ceremony if held on the campus.' That finding is impermissible under Idlewild Liquor Corp. and Stratton, supra. Appellants contend that the stated reason is a sham. It is a question of fact and must await a trial on the merits before a three-judge court.
 
 
 68
 Furthermore, the alleged 'alternate and independent ground' for denial is seriously challenged by appellants as an unconstitutional prior restraint of speech and peaceful assembly because of its vagueness and overbreadth. Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), holds that, '* * * even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' 364 U.S., supra at 488, 81 S.Ct. at 252.
 
 
 69
 The use of the Regents' Resolution to act as a prior restraint upon speech and peaceful assembly is condemned in Carroll v. Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). Sanctions against appellants may take the form of criminal prosecutions for violations of valid laws, but may not take the form of prior censorship, absent a showing in an adversary proceeding of a clear and present danger of riot and disorder. The appellants alleged that the assembly would be held with proper police supervision, and that allegation was uncontested before the single district court judge.
 
 
 70
 The Regents' Resolution, as applied to the facts of this case, is further subject to the serious constitutional infirmities set forth by the Supreme Court in Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), and Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). In Brandenburg, the court stated '* * * the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' 395 U.S. at 447, 89 S.Ct. at 1829. As condemned in Shuttlesworth, the Regents' Resolution '* * * was administered so as, in the words of Chief Justice Hughes, 'to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought * * * immemorially associated with resort to public places." 394 U.S. at 159, 89 S.Ct. at 943.
 
 
 71
 The majority contends that the pleadings and affidavits are insufficient to state a claim for injunctive relief and, therefore, the requirement that the plaintiffs must at least formally allege the basis for equitable relief has not been met. In making that determination based in part upon the affidavits, the majority has decided the matter on its merits, a decision which the courts of appeals are without jurisdiction to render under 28 U.S.C. 2281. That jurisdiction is reserved for three-judge district courts and the Supreme Court under 28 U.S.C. 1253. 'In the Stratton case it was held that a court of appeals was precluded from reviewing on the merits a case which should have originally been determined by a court of three judges.' Idlewild Liquor Corp., supra, at 715-716, 82 S.Ct. at 1296.
 
 
 72
 The case is not moot. When there is a prior restraint of First Amendment rights and the censor persists in its policies, the issues continue. Although the date of the assembly which was the focal point of the litigation has long since passed, the appellants still live, the Vietnam war still continues, the Regents' Resolution is still in effect, there is still a compulsory draft under the Selective Service System, and appellants assert that they will continue in their activities. 'The underlying question persists and is agitated by the continuing activities and program of petitioners: whether, by what processes, and to what extent the authorities * * * may restrict petitioners in their rallies and public meetings.' Carroll v. Princess Anne, supra, at 179, 89 S.Ct. at 350.
 
 
 73
 The majority holds that on the record as a whole there is no threat of irreparable harm and no chilling effect on First Amendment rights. That determination must be for some court other than this one. Furthermore, what remedy lies to prohibit the censor except by injunction? The Supreme Court has uniformly held that an injunction is the effective remedy. W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). And, 'it makes no difference that the instant case was not a criminal prosecution and not based on a refusal to comply with a licensing requirement.' N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).
 
 
 74
 The majority asserts that the complaint was properly dismissed because although appellants allege that they will continue in their efforts in regard to the war in Vietnam and the Selective Service System, they fail to allege that any event similar to the Vietnam Commencement is planned for the future. As stated in Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957):
 
 
 75
 'The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. Maty v. Grasselli Chemical Co., 303 U.S. 197 (58 S.Ct. 507, 82 L.Ed. 745).'
 
 
 76
 Furthermore, in considering whether injunctive relief should be granted, a federal district court should consider the matter as of the time its jurisdiction is invoked rather than some hypothetical future date. Dombrowski v. Pfister, 380 U.S. 479, 490, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The complaint was filed and jurisdiction invoked prior to the date of the planned assembly.
 
 
 77
 For the reasons set forth therein, I concur in the decision of the majority which determines that part of the complaint challenging the constitutionality of 50 U.S.C. App. 462(a). In the present posture of the pleadings, the district court did not have jurisdiction. The Regents are the only defendants, and it is clear that they have no authority to enforce a federal penal statute. When a plaintiff has failed to sue an indispensable party, a single judge may dismiss the complaint without attempting to convene a three-judge court. Osage Tribe of Indians v. Ickes, 45 F.Supp. 179 (D.D.C.1942), aff'd, 133 F.2d 47 (D.C. Cir. 1943), cert. denied, 319 U.S. 750, 63 S.Ct. 1158, 87 L.Ed. 1704 (1943).
 
 
 78
 I would reverse with directions 'to the District Court for expeditious action consistent with the views here expressed.' Idlewild Liquor Corp., supra, at 716, 82 S.Ct. at 1296.
 
 
 
 *
 The Honorable Warren Ferguson, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Cal.Const., Art. IX, 9
 
 
 [2]
 '(Any person) * * * who knowingly counsels, aids, or abets another to refuse or evade registration or service in the armed forces or any of the requirements of this title * * * or who in any manner shall knowingly * * * hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title * * * or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses shall (be subject to criminal prosecution).'
 
 
 [3]
 'It continues to be my opinion that violations of the Selective Service Act will occur in the course of the event if it is held as proposed * * * one cannot ignore the fact that the basic purposes of the proposed 'commencement' are (1) to honor draft eligible men who have signed a pledge of refusal to serve in the armed forces, and (2) to demonstrate CDO's assurance of support, financial and otherwise, to such persons and others who may refuse induction.'
 
 
 [4]
 'An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.'
 
 
 [5]
 28 U.S.C. 2201
 
 
 [6]
 42 U.S.C. 1983