[Civ. No. 50340. Second Dist., Div. One. Jan. 12, 1978.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Plaintiff and Respondent, v.
CITY OF SANTA MONICA et al., Defendants and Appellants.

**COUNSEL**

Richard L. Knickerbocker, City Attorney, and Dennis T. Omoto, Deputy City Attorney, for Defendants and Appellants.

Donald L. Reidhaar, George L. Marchand and James Richard, Jr., for Plaintiff and Respondent.

**OPINION**

**HANSON, J.**—The City of Santa Monica, a municipal corporation (hereinafter referred to as Santa Monica), appeals from a judgment determining that Santa Monica construction permit fee ordinances have no application to a work of construction undertaken by the Regents of the University of California, a corporation (hereinafter referred to as Regents), permanently enjoining Santa Monica from enforcing said ordinances as to Regents and awarding Regents as damages the refund of fees paid for permits plus interest.

FACTS

The record discloses that under date of September 20, 1974, the Regents entered into a lease with the owner, Topa Thrift and Loan Association, for premises at 1918 Main Street in Santa Monica to be used for educational purposes. The Regents, which manages and holds legal title to property for the University of California, desired to relocate partitions and design and install an air conditioning system on the leasehold premises. At the time the construction was undertaken, the

Regents as an agency of the State of California employed a full staff of competent licensed architects, engineers and building inspectors to review construction documents and to inspect construction projects performed for the University of California (Cal. Const., art. IX, § 9). The Regents' employees designed the construction project to conform to the Uniform Building Code, 1973 edition. The design was approved by the state fire marshal (Health & Saf. Code, § 13108; Cal. Admin. Code, tit. 19) and by the Office of Architects & Engineers of the University of California at Los Angeles.

Nonetheless, in July 1975 Mr. Roam called from the building department of Santa Monica and requested that the Regents obtain a building permit for the contemplated alterations. The Santa Monica Building Code requires the issuance of a written permit from the building department prior to any construction, alteration or repair of a building located in Santa Monica, and further requires at the time an application for a permit is made the payment of building permit fees. A portion of the building permit fees, known as the "plan check" fee, is payable upon submission of construction plans for approval by the building department while the balance of the building permit fee includes payment for city inspection services and this portion is payable upon issuance of the building permit.

In order to avoid delay in the construction of the alterations, the Regents paid to Santa Monica under protest that portion of the building permit fee known as the "plan check" fee. The Regents were also required by Santa Monica to apply to the building department for a zoning variance regarding the parking facility as a condition prerequisite to approval of the plan of alteration, and issuance of the necessary building permit and payment of an additional fee was required for the zoning variance application. Therefore, in order to prevent further delays and to mitigate damages the Regents paid to Santa Monica under protest the required fee for the zoning variance application as well.

The Regents notified Santa Monica by letter that the permit fee ordinances were inapplicable to work done by the Regents because the Regents is a constitutionally created branch of the state government and, as such, is exempt from local building codes and from the payment of local permit, inspection, and zoning variance fees (Gov. Code, §§ 6103.6, 6103.7). However, Santa Monica disputed the applicability of this exemption to the contemplated work.

Accordingly, the Regents completed the work of construction and filed a complaint alleging that an actual controversy had arisen between the Regents and Santa Monica in this regard; that Santa Monica had the duty to refund the building permit, inspection and zoning variance fees collected; and requesting a declaration that the Regents should have no duty to pay such fees in the future. The Regents also sought damages for delays in alterations to the leased premises caused by the unreasonable and unlawful interference by Santa Monica.

The matter proceeded to trial and the parties filed a stipulation of facts which recites that the Regents paid a total sum of $896.50 to Santa Monica for permit and zoning variance application fees. The parties further stipulated that the zoning variance was required by Santa Monica because the Regents were otherwise unable to comply with the provisions of its ordinance which required that property on which parking spaces are provided must be owned in fee by the owner in fee of the lot or building site which is subject to the parking space requirements, and a second ordinance which requires that the property on which parking spaces are situated should be located within 1,000 feet of the perimeter of the lot or building site and should commence within 300 feet of that perimeter. The variance was ultimately granted by Santa Monica on or about January 13, 1976, subject to certain conditions including, inter alia, that the Regents should comply with all other provisions of the Santa Monica Municipal Code. The Regents complied with all procedures and paid all fees relating to the construction work, a project costing approximately $100,150, but did so under express protest. The Regents pending trial released Santa Monica pursuant to stipulation from "any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, . . . growing out of any and all an [sic] unknown, foreseen and unforeseen damages, claims, and contentions in any matter relating to the transaction or transactions arising from the facts and subject matter of the instant suit" except for the damages claimed in the present litigation. The stipulated facts noted further that had Santa Monica denied the variance the use of the leased premises by the Regents would have been restricted since off-street parking would be required and this was not available on the leased premises.

The trial court found that the building and zoning ordinances of Santa Monica had no application to the Regents with respect to the construction project relating to the leased premises or to any future construction

or changes in premises owned or leased by the Regents and used for educational purposes; that the Regents were not required to pay fees for inspection to Santa Monica on such projects; that Santa Monica should be permanently enjoined from attempting to enforce their building and zoning ordinances against the Regents; and that the Regents were entitled to judgment against Santa Monica in the sum of $896.50 plus interest. Santa Monica has appealed.

## ISSUE

The pivotal issue in this case is whether a chartered city such as Santa Monica has authority to apply and enforce its building and zoning ordinances and to impose building permit and inspection fees against the Regents in view of the provisions of Government Code sections 6103.6 and 6103.7.

## DISCUSSION

■ The Regents have been characterized as "a branch of the state itself" (*Pennington* v. *Bonelli* (1936) 15 Cal.App.2d 316, 321 [59 P.2d 448]) or "a statewide administrative agency" (*Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854, 864 [72 Cal.Rptr. 756]). It is apparent that the Regents as a constitutionally created arm of the state have virtual autonomy in self-governance (Cal. Const., art. IX, § 9). "The corporation known as the Board of Regents constitutes the highest administrative authority of the University of California. 'The Regents have the general rule-making or policy-making power in regard to the University . . . and are . . . fully empowered with respect to the organization and government of the University. . . .' (*Goldberg* v. *Regents of University of California* (1967) 248 Cal.App.2d 867, 874 [57 Cal.Rptr. 563]; *Newmarker* v. *Regents of Univ. of Cal.*, . . ., 160 Cal.App.2d 640, 645 [325 P.2d 558].) '[T]he power of the Regents to operate, control, and administer the University is virtually exclusive.' (30 Ops.Cal.Atty.Gen. 162, 166; Cal. Const., art. IX, § 9.) . . ." (*Regents of University of California* v. *Superior Court* (1970) 3 Cal.3d 529, 540, fn. omitted [91 Cal.Rptr. 57, 476 P.2d 457].) As a consequence, policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes (*Hamilton* v. *Regents* (1934) 293 U.S. 245 [79 L.Ed. 343, 55 S.Ct. 197]).

■ In view of the virtually plenary power of the Regents in the regulation of affairs relating to the university and the use of property owned or leased by it for educational purposes, it is not subject to municipal regulation. "When . . . [the state] engages in such sovereign activities as the construction and maintenance of its buildings, . . ., it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 183 [302 P.2d 574].) Thus, the Regents in constructing improvements solely for educational purposes are exempt from local building codes and zoning regulations (*Hall* v. *City of Taft, supra*; *City of Orange* v. *Valenti* (1974) 37 Cal.App.3d 240 [112 Cal.Rptr. 379]; *County of Los Angeles* v. *City of Los Angeles* (1963) 212 Cal.App.2d 160 [28 Cal.Rptr. 32]) and are also specifically exempt from payment of local permit and inspection fees (Gov. Code, §§ 6103, 6103.6, 6103.7).

Santa Monica argues that as a chartered city it has authority to regulate its municipal affairs (Cal. Const., art. XI, §§ 5, 7) unless the subject matter has been covered by general law in a manner that indicates that it has become an exclusive or paramount state concern (*In re Hubbard* (1964) 62 Cal.2d 119 [41 Cal.Rptr. 393, 396 P.2d 809]). It further maintains that building and zoning ordinances are valid regulations of municipal affairs (Cal. Const., art. XI, § 7) and that no general law has preempted the field since the provisions of the Education Code regulate construction of school buildings exclusive of university buildings. ■ However, the authority of a charter city to regulate municipal affairs is not plenary (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137]). The California Constitution (art. XI, § 7) does not authorize municipalities to apply local zoning restrictions to state agencies (*Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417, 424-427 [324 P.2d 328]), a power which may be granted only by legislative consent.

"A city is permitted to make local ordinances and regulations which are not in conflict with general laws. (Cal. Const., art. XI, § 7.) However, a city may not enact ordinances which conflict with general laws on statewide matters (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 184 [302 P.2d 574]); the Regents of the University of California are vested by the Constitution with the legal title and management of property of the University of California and have the unrestricted power to take and hold real and personal property for the benefit of the university. (Cal. Const., art. IX, § 9, subd. (f).) Thus, the University of California is not

subject to local regulations with regard to its use or management of the property held by the Regents in public trust. (See *Hall* v. *City of Taft, supra,* at pp. 182-183.)" (*Oakland Raiders* v. *City of Berkeley* (1976) 65 Cal.App.3d 623, 626 [137 Cal.Rptr. 648].)

However, Santa Monica claims that the Regents failed to bring their case within the exception provided in Government Code section 6103.7. That section obligates the Regents to pay reasonable and nondiscriminatory plan-checking and inspection fees of the city *unless* (1) the same services are required by law to be performed by another governmental agency and (2) these services were in fact performed by another governmental agency. Section 6103.7 declares, in pertinent part, that it does not authorize "the assessment against, or collecting of any fee or charge from, the state or its agencies when, and to the extent that, such inspection or services are otherwise required by law, to be, and are in fact, performed by another governmental agency."

The Regents respond that their powers of governance include authority to design, inspect and construct educational facilities; that it was amply demonstrated by affidavits filed in the trial court that its full-time staff of licensed architects, engineers and building inspectors drafted plans, reviewed construction, and inspected the educational facilities; and that the construction was approved by the Office of Architects & Engineers of the University of California at Los Angeles and the state fire marshal (Health & Saf. Code, § 13108; Cal. Admin. Code, tit. 19). Therefore, assuming, without deciding, that section 6103.7 might otherwise subject the Regents to fees for plan-checking or inspection imposed by local ordinance, it appears that the conditions of that statute are amply satisfied by the demonstrated action of the Regents in the present case.

■ Santa Monica argues further, however, that the statutory exemptions of Government Code sections 6103, 6103.6 and 6103.7 are inapplicable to the Regents by virtue of Government Code sections 53090 and 53091. Under section 53091 "local agencies" are required to comply with applicable building and zoning ordinances of the municipality in which the property is situated. However, section 53090, which defines "local agency," excludes "the state" and, by implication, such statewide agencies with plenary constitutionally granted powers as the Regents.

Finally, it is patently immaterial to the issue in the case at bench whether the property was owned or leased by the Regents.

DISPOSITION

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 30, 1978.