Filed 7/2/24 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

<table>
<tr><td>

THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA,

    Petitioner,

v.

THE SUPERIOR COURT OF THE
CITY AND COUNTY OF SAN
FRANCISCO,

    Respondent;

PARNASSUS NEIGHBORHOOD
COALITION,

    Real Party in Interest.

</td><td>

A169318

(City & County of San Francisco
Super. Ct. No. CGC-23-605307)

**ORDER MODIFYING OPINION
AND DENYING REHEARING
[NO CHANGE IN JUDGMENT]**

</td></tr>
</table>

**THE COURT**[*]:

It is ordered that the published opinion filed on June 13, 2024, be modified as follows:

On page 16, the second full paragraph, the first sentence, change "vacate its order denying the Regents' demurrer" to "vacate its order overruling the Regents' demurrer."

On page 16, the second full paragraph, the third sentence, change "The Regents shall recover their costs on appeal. (Cal. Rules of Court, rule

---

[*] Fujisaki, Acting P. J., Petrou, J., and Rodríguez, J. participated in the decision.

1

8.278(a).)" to "The Regents shall recover their costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)"

There is no change in the judgment.

Real party in interest's petition for rehearing, filed June 28, 2024, is denied.


Dated: ___7/2/2024_____        ____Fujisaki, Acting P.J.___, Acting P. J.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Respondent;<br><br>PARNASSUS NEIGHBORHOOD COALITION,<br><br>        Real Party in Interest. | A169318<br><br>(City & County of San Francisco Super. Ct. No. CGC-23-605307) |


The Regents of the University of California (Regents) approved the construction of a new hospital at its University of California San Francisco (UCSF) Parnassus Heights campus (Parnassus); the hospital will allegedly exceed local building height and bulk restrictions. Parnassus Neighborhood Coalition (the Coalition) — a group of property owners residing near the proposed hospital — sued to enjoin the construction, a "threatened nuisance per se." In a demurrer, the Regents argued they are a state entity immune from complying with local building and zoning regulations when engaging in a governmental activity such as constructing university buildings. The trial court disagreed, concluding the Regents' immunity hinged on a question of

1

fact — whether the proposed construction constituted a governmental or proprietary activity — that could not be resolved on a demurrer.

The Regents petitioned for a writ of mandate to vacate the trial court's order. Assuming the truth of facts pled by the Coalition, we conclude the proposed hospital would facilitate the provision of clinical services, thereby advancing UCSF's academic mission and the Regents' educational purpose — i.e., governmental activity. Because the project falls within the Regents' broad public purpose, we hold the Regents are exempt from the local regulations at issue, and the demurrer should have been sustained. (*Bame v. City of Del Mar* 86 (2001) Cal.App.4th 1346, 1358 (*Bame*).) Accordingly, we issue the writ of mandate.

## BACKGROUND

The Regents own and operate UCSF, a medical complex, research center, and professional school in San Francisco (City), with an educational mission. In 2014, the Regents approved a long-range development plan for UCSF. It consisted of renovating several of UCSF's campuses, including Parnassus. The plan primarily would have involved construction of a hospital to provide clinical services to advance UCSF's academic mission. UCSF ultimately did not move forward with this proposed change.

Instead, the Regents approved the "Comprehensive Parnassus Heights Plan" in 2021. The plan contemplates the construction of a larger hospital (the New Hospital), approximately 900,000 gross square feet. Although the project's size would allegedly violate the City's property and zoning regulations, it would provide more beds for inpatients and increase the campus's hospital capacity. This was part of the Regents' plan to advance its mission, which includes identifying unmet community needs and making new investments to satisfy those needs.

2

In March 2023, the Coalition filed a complaint against the Regents to enjoin construction of the New Hospital. It alleged the proposed construction violated the City's height and bulk restrictions and would result in air and noise emissions, creating a nuisance to local residents. The Regents demurred, arguing they are exempt from local building and zoning regulations because they are a state entity with sovereign immunity. According to the Regents, constructing the New Hospital is for patient care, scientific research, and teaching, thus furthering its educational purpose. Specifically, the Regents provide medical education for graduate students in the five medical schools located at Parnassus. That the proposed construction has some additional noneducational purpose does not destroy the Regents' exemption from local regulations.

In opposition, the Coalition argued the proposed construction would promote the continued expansion of UCSF's proprietary activities as a healthcare provider rather than exclusively advancing its educational and patient needs. Specifically, UCSF's revenue doubled from 2015 to 2021. Because the Regents' proposed construction is not solely for educational purposes, the Coalition argued, they are not exempt from local building codes and zoning restrictions.

The trial court agreed with the Coalition and overruled the demurrer. It concluded the applicability of the City's zoning and planning regulations requires resolution of a question of fact — "whether the hospital, as currently proposed, is a proprietary activity subject to local regulations" — not appropriate for resolution on demurrer. The court further concluded the Regents failed to cite anything to support their argument that state entities may be entitled to sovereign immunity when their proposed projects involve a

3

mix of proprietary and government activities. According to the court, the exemption only applies when a project is *solely* for educational purposes.

The Regents petitioned for a writ of mandate, requesting review of the trial court's demurrer ruling, and seeking a stay. We stayed discovery pending further consideration of the petition and issued an order to show cause why mandate or other appropriate relief should not be granted.

## DISCUSSION

The Regents urge us to issue a writ of mandate vacating the trial court's order overruling their demurrer. According to the Regents, they are exempt from the City's building and zoning regulations otherwise generally applicable to private businesses. We agree.

As a preliminary matter, writ review is warranted. Generally, an order overruling a demurrer is not immediately appealable; it may be reviewed on appeal following a final judgment. (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.) But writ review may be granted where the order raises a significant issue of law or "resolution of the issue would result in a final disposition as to the petitioner." (*Ibid*.) Both considerations apply here. Whether the Regents are entitled to sovereign immunity from local building and zoning regulations when building the New Hospital presents a significant constitutional issue. (*City & County of San Francisco v. Regents of University of California* (2019) 7 Cal.5th 536, 544 (*Hastings*) [allocation of authority between a local government and state agency is an issue regarding the constitutional system].) And resolution of this issue in the Regents' favor will result in a final disposition as to the Coalition's complaint — it would be dismissed. (*Casterson*, at p. 182.)

We independently review an order overruling a demurrer, assessing whether the complaint states a cause of action under any legal theory.

4

(*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1497.) If it does, we assess whether the complaint clearly discloses a defense or bar to recovery. (*See's Candies, Inc. v. Superior Court* (2021) 73 Cal.App.5th 66, 76.) In doing so, we assume the truth of all facts properly pleaded and those reasonably inferred from the pleadings. (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) But we do not assume the truth of "contentions, deductions, or conclusions of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 440.) Having engaged in that review, we agree the trial court erroneously overruled the demurrer. We conclude the complaint clearly discloses the Regents' immunity from the City's planning code, barring the Coalition's recovery as a matter of law.

## I.

We begin by providing an overview of the relevant law. The California Constitution establishes the Regents as a "public trust . . . with full powers of organization and government," including "the legal title and the management and disposition" of university property and "of property held for its benefit." (Cal. Const., art. IX, § 9, subds. (a), (f); *Hastings*, *supra*, 7 Cal.5th at p. 545.) As a "constitutionally created arm of the state," the Regents have "virtual autonomy in self-governance," and their power " ' "to operate, control, and administer the University is virtually exclusive." ' " (*Regents of University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130, 135 (*Santa Monica*).) Given this unique status, the Regents have "immunity from local regulation unless the state, through statute or provision of the California Constitution, has [expressly] consented to waive such immunity." (*Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.* (1996) 43 Cal.App.4th 630, 635; *Hall v. City of Taft* (1956) 47 Cal.2d 177, 182–183.) Indeed, there are

5

general limits on a "city's power over 'municipal affairs' " as related to state entities. (*Hastings*, at p. 552; see also *In re Means* (1939) 14 Cal.2d 254, 256–258 [municipal plumber certification ordinance could not be applied to state employee because the state acted in an exclusive field when setting qualifications for state employees].)

For instance, "regulations that require construction to be overseen by local supervisors ceases to be a municipal affair once they are applied to state buildings." (*Hastings*, *supra*, 7 Cal.5th at p. 553.) Generally, when the state "engages in such sovereign activities as the construction and maintenance of its buildings," "it is not subject to local regulations" absent express legislative or constitutional waiver of that sovereign immunity. (*Hall v. City of Taft*, *supra*, 47 Cal.2d at p. 183 [rejecting city's attempt to enforce building ordinances against contractor constructing a school building where plans had been approved by the State Department of Education].) In *City of Orange v. Valenti* (1974) 37 Cal.App.3d 240, the court determined a city ordinance requiring a specific number of parking spaces did not apply to the state unemployment insurance office. (*Id*. at p. 244.) A contrary holding would have curtailed the use of the building as an unemployment insurance office, impermissibly limiting the "state's sovereignty by local regulation." (*Ibid*.) Similarly, the state's maintenance of its public school buildings, including trash collection, is a "sovereign activity not subject to local regulation absent legislative or constitutional consent to local regulation." (*Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.*, *supra*, 43 Cal.App.4th at p. 637 [school districts as state agencies were immune from city trash collection regulations requiring them to exclusively use plaintiff's collection services].) "The cases concern substantive regulatory requirements that interfered with the state's substantive judgments about how to perform its assigned

6

functions." (*Hastings*, *supra*, 7 Cal.5th at pp. 553–554.) The "state's prerogatives must prevail" if there is a conflict between a "municipality's view of, say, how best to build a parking lot, and the state's ability to decide for itself what sort of parking lot would best serve its needs." (*Id.* at p. 554.)

But state entities are not "categorically beyond the reach of any local law." (*Hastings*, *supra*, 7 Cal.5th at p. 554.) Exemption from local regulation is appropriate when the entity is operating in a governmental capacity. (*Bame*, *supra*, 86 Cal.App.4th at p. 1356.) On the other hand, municipal regulation of an entity's activities may be authorized in situations where its conduct bears no relation to its governmental functions.[1] (*Hastings*, at pp. 553–554, fn. 5; *Board of Trustees v. City of Los Angeles* (1975) 49 Cal.App.3d 45, 49 (*Los Angeles*).) In *Los Angeles*, the court rejected the argument of the Board of Trustees of the California State University that it was immune from a municipal permitting requirement regarding a circus being held on its property. (*Los Angeles*, at p. 48.) The state was leasing its property for a "revenue-producing activity" that had "*no relation* to the governmental function of the university." (*Id.* at p. 50, italics added; see also *Guidi v. State* (1953) 41 Cal.2d 623, 625, 627–628 [state agricultural society that was organized and operated to interest and educate the general public in agricultural and industrial subjects not immune from tort liability when conducting fireworks show and operating horse arena on government property].) Other courts have similarly concluded the Regents are not entitled to sovereign immunity where they acted in a capacity no different

_____

[1] Other exceptions to the Regents' sovereign immunity, not relevant here, include appropriation, general police power regulations applicable to persons and corporations, and laws applicable to public agencies that regulate matters of statewide concern. (*Scharf v. Regents of University of California* (1991) 234 Cal.App.3d 1393, 1402.)

7

from a private university or individual. (*Regents of University of California v. Superior Court* (1976) 17 Cal.3d 533, 537 [making investment decisions "are not so closely related to its educational decisions to cloak" the university with immunity, they are not uniquely governmental functions].)

## II.

Assuming the truth of facts alleged in the Coalition's complaint, we conclude the Regents are exempt from the City's planning code provisions at issue. (*See's Candies, Inc. v. Superior Court*, *supra*, 73 Cal.App.5th at p. 76.) The Coalition does not and cannot allege that construction of the New Hospital has no relation to the Regents' governmental functions of providing medical education and other educational purposes. (*Los Angeles*, *supra*, 49 Cal.App.3d at p. 50.) The Regents have vast power regarding UCSF's property administration, such as taking and holding "without restriction, all real and personal property for the benefit of the university or incidentally to its conduct." (Cal. Const., art. IX, § 9, subd. (f).) "Broadly stated, the function of the [Regents] is to impart learning and to advance the boundaries of knowledge." (*Goldberg v. Regents of University of California* (1967) 248 Cal.App.2d 867, 879.) The Coalition concedes UCSF provides clinical services and that the construction of a hospital — albeit a smaller one than the New Hospital — at Parnassus would advance the Regents' "educational mission." That concession is fatal to the Coalition's complaint. Even though the proposed New Hospital may be larger and produce greater revenue, it still has a relation to the Regents' governmental functions and is thus entitled to immunity. (*Los Angeles*, at p. 50; *Bame*, *supra*, 86 Cal.App.4th at p. 1356.)

Indeed, the Regents determined a larger hospital was necessary to expand access to accommodate increasing patient demand and UCSF's

8

survival.  (*Smith v. Regents of University of California* (1993) 4 Cal.4th 843, 852–853 [Regents "have considerable discretion to determine how best to carry out the University's educational mission"], disagreed with on other grounds by *Board of Regents of University of Wisconsin System v. Southworth* (2000) 529 U.S. 217, 228.)  On its face, the Coalition's complaint — seeking the Regents' compliance with local building regulations in constructing the New Hospital — concerns "substantive regulatory requirements that interfere[] with the state's substantive judgments about how to perform its assigned functions." (*Hastings*, *supra*, 7 Cal.5th at pp. 553–554.)  In these circumstances, the "state's prerogatives must prevail" since there is a conflict between the City's planning code and the Regents' "ability to decide for itself what sort of [hospital] would best serve its needs." (*Hastings*, at p. 554; Attorney General Opinion 75 Ops.Cal.Atty.Gen. 98, 103 (1992) [Regents' construction of faculty housing was not subject to Subdivision Map Act since it was "such an integral part of its land management prerogatives and so closely related to its educational decisions"]; *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [Attorney General opns. not binding, but entitled to great weight].)

More importantly, that the New Hospital may increase UCSF's revenue — and consequently that of the Regents — does not constrain the Regents' state sovereignty. (*Bame*, *supra*, 86 Cal.App.4th at p. 1358.)  *Bame* is instructive.  There, the court addressed whether a city could impose an admissions tax on private entities under contract with the state agricultural district when those entities conducted consumer-oriented events, such as conventions and exhibitions at a fairground.  The court rejected the argument that by leasing property for these consumer-oriented events, the district was engaging in solely revenue-producing or proprietary functions beyond its

9

governmental functions.  (*Id*. at pp. 1351, 1353, 1357.)  Those events instead fell within the district's broad purposes "to educate or inform consumers of California's products, industries or resources."  (*Id*. at pp. 1357–1358.)  The district's immunity from the tax thus extended to private entities with which the district leased or contracted to hold consumer product exhibitions, even though their actions were also revenue raising.  (*Id*. at p. 1358.)

Here too the proposed construction falls within the Regents' broad purposes.  The Regents operate UCSF, including Parnassus, which provides medical education.  UCSF has an academic mission that includes providing clinical services.  (Ed. Code, § 66010.4, subd. (c) [University of California has "exclusive jurisdiction in public higher education over . . . graduate instruction in the professions of medicine, dentistry, and veterinary medicine. . . .  The University of California shall be the primary state-supported academic agency for research"].)  Constructing the New Hospital is thus " 'part of [UCSF's] intended public purpose, not merely ancillary revenue raising.' "  (*Bame*, *supra*, 86 Cal.App.4th at p. 1356.)  While the relevant constitutional provision governing the Regents "does not expressly include" construction, building the New Hospital is nonetheless "encompassed within the [Regents'] purpose" of advancing the UCSF's academic needs of providing clinical services.  (*Bame*, at p. 1358; *Yerba Buena Neighborhood Consortium, LLC v. Regents of University of California* (2023) 95 Cal.App.5th 779, 789 [recognizing the Regents increased the size of the New Hospital for UCSF " 'to retain its leadership position in patient care, research, and education' "].)  As such, the Regents are immune from the relevant planning code provisions at issue here.  We are not confronted with a situation where the governmental function at issue is trivial or peripheral when compared with

10

the proprietary function, and we need not address whether such an instance would lead to the same result.

The Coalition's arguments do not persuade us otherwise. Relying on *Santa Monica*, *supra*, 77 Cal.App.3d 130, it insists the Regents are only exempt from local building codes and zoning regulations if the construction is *solely* for educational purposes. (*Id*. at p. 136.) The Coalition asserts the New Hospital advances UCSF's proprietary interest as a healthcare provider, thus nullifying the Regents' immunity here. In support, the Coalition notes UCSF expanded its clinical services in 2015 beyond that necessary to advance its educational mission, doubling its revenue between 2015 to 2021, while student enrollment only increased by two percent. And constructing the New Hospital promotes UCSF's continued expansion of its proprietary activities; the Coalition notes it has rebranded itself UCSF Health, and the educational population of students and faculty is expected to grow by 25 percent, while the staff workforce would grow approximately 60 percent. Moreover, according to the Coalition, UCSF competes with other private healthcare providers.

First, we do not read *Santa Monica* in such a restrictive manner. There, the Regents leased property for educational purposes. (*Santa Monica*, *supra*, 77 Cal.App.3d at p. 132.) The court determined the local building regulations governing construction and permitting fees were not applicable to the Regents' alterations — relocating partitions and installing an air conditioning system — in property leased by the University of California. (*Id*. at pp. 132, 135–136.) The court's statement — "the Regents in constructing improvements solely for educational purposes are exempt from local building codes and zoning regulations" — cannot be read to limit the circumstances under which the Regents are exempt from local regulations.

11

(*Id*. at p. 136; see also Cal. Const., art. IX, § 9 [description of the Regents' authority lacking the terms "solely" or "exclusively"].)  The court simply addressed the circumstances present in that case.  But it did not purport to address a situation where a project squarely within the Regents' government function might also serve some proprietary interest.

Second, the Coalition's repeated conclusory allegations that the New Hospital serves a proprietary function do not save its complaint from demurrer.  (See *Beard v. City & County of San Francisco* (1947) 79 Cal.App.2d 753, 755 [allegation in a tort liability case that a municipal corporation operates a hospital in a proprietary capacity is generally a mere conclusion of law].)  We do not assume the truth of contentions or conclusions of law in the operative complaint.  (*Stearn v. County of San Bernardino*, *supra*, 170 Cal.App.4th at p. 440.)  More importantly, the Coalition fails to cite any authority for its assertion that by providing healthcare, the Regents, through UCSF, are acting in a purely proprietary capacity not entitled to immunity.  (*Beard*, at p. 757 ["receipt of revenue from the activities is not the essential factor which makes them proprietary," the "determining factor is whether the activities 'are essentially governmental in character' "].)  *Beard* does not assist the Coalition.  That court addressed whether operating a hospital "under the charter of the consolidated city and county is a governmental or a proprietary function."  (*Id*. at p. 754.)  But the parties conceded a county is not liable for injuries arising from the operation of a hospital, and the respondent conceded a city is liable for injuries arising out of its proprietary activities.  (*Ibid*.)  Thus, the determinative issue there was whether San Francisco's dual status as both a city and county signified it

12

operated the hospital as a city. (*Ibid*.)[2] The identity of the entity engaging in the activity was critical to determining liability. (*Id*. at p. 756.) Here, there is no dispute the Regents operate UCSF as a state entity entitled to immunity when they engage in governmental functions.

To the extent the Coalition relies on *Yolo v. Modesto Irrigation District* (1932) 216 Cal. 274, to argue the New Hospital is a purely proprietary enterprise — since it will provide services that are additional to and not necessary for UCSF's education mission — that reliance is misplaced. *Yolo* merely stated irrigation districts that generate and transmit electricity are engaged in a proprietary activity — the services the district provided were different from and beyond necessary irrigation district activities, such as pumping and draining. (*Id*. at pp. 277–278.) Thus, the irrigation district was liable for torts related to generating and transmitting electricity. (*Id*. at p. 280.) Here, the Coalition alleged the Regents in 2014 proposed constructing a smaller hospital that would provide clinical services thus fulfilling its academic mission. It also alleged the New Hospital would provide healthcare services. This appears to be a distinction without a

---

[2] We acknowledge the "distinction between governmental and proprietary activity is no longer applicable to determine governmental tort liability, [but] it remains viable in the context of encroachment of municipal regulations." (*Bame*, *supra*, 86 Cal.App.4th at p. 1356.) But we question whether tort liability case law remains useful when identifying specific circumstances where a state entity is engaging in proprietary rather than governmental activities. Indeed, one court noted the analysis in *Beard* (among other cases) may be obsolete when considering whether an activity was proprietary. (*Riverside County Transportation Com. v. Southern California Gas Co.* (2020) 54 Cal.App.5th 823, 864, fn. 22.) It suggested prior cases tried to find entities engaged in proprietary activities because they were decided in an "era when municipal tort immunity still turned on the governmental-proprietary distinction." (*Id*. at pp. 864–865.)

13

difference, and certainly not one that nullifies the fact that both the smaller and larger hospital would further UCSF's educational mission.

Because the New Hospital serves the Regents' broad governmental purpose, they are exempt from the City's planning code. The Coalition is not entitled to relief.

## III.

The Coalition contends the issue of the Regents' immunity presents a question of fact not suitable for resolution on demurrer. Based on the law set forth above and the facts alleged, we disagree. The Coalition admits the "operation of clinical healthcare facilities" "necessary for teaching new medical professionals falls within" the Regents' educational purpose. Indeed, it alleged the originally planned 2014 hospital would satisfy UCSF's need to provide clinical services that advance its academic mission. The only reasonable inference to be drawn from these allegations is that the New Hospital — which would also provide clinical services — similarly advances UCSF's educational mission, even if it also does more. (*Regents of University of California v. Superior Court, supra*, 220 Cal.App.4th at p. 558 [accepting as true reasonable inferences from plaintiff's allegations].) These undisputed facts are fatal as a matter of law to the Coalition's nuisance claim under the sovereign immunity cases discussed above — the New Hospital serves the Regents' broad education purposes, and they are entitled to immunity from the relevant City planning code provisions at issue here. (*Bame, supra*, 86 Cal.App.4th at p. 1356.)

None of the Coalition's cited authorities alters this conclusion. The complaint alleges facts sufficient to invoke the Regents' immunity from compliance with the planning code without reference to other facts supported by an affidavit. (Compare with *Pianka v. State* (1956) 46 Cal.2d 208, 212

14

[error to grant motion to dismiss negligence claim where state presented an affidavit containing facts contradicting plaintiff's allegations]; *See's Candies, Inc. v. Superior Court*, *supra*, 73 Cal.App.5th at p. 76.) There is also no issue regarding the Regents' status as a state entity. (Compare with *Beard v. City & County of San Francisco*, *supra*, 79 Cal.App.2d at pp. 755–756 [concluding the City & County of San Francisco's unusual dual status as a county and municipal actor rendered the manner in which it operated a hospital a mixed question of law and fact].) Nor is there any issue concerning whether the planning code governs a municipal affair or whether the court must invalidate a valid charter city measure. (Compare with *Hastings*, *supra*, 7 Cal.5th at p. 555 ["Courts may invalidate an otherwise valid charter city measure only where, 'under the historical circumstances presented, the state has a more substantial interest in the subject than the charter city' "— as demonstrated through a " 'fact-bound justification' "].) In other words, no additional facts are necessary to adduce the Regents' entitlement to immunity. The trial court erroneously denied the Regents' demurrer.

We also reject the Coalition's request for leave to amend its complaint to establish facts that UCSF operates its healthcare services as a business enterprise entirely separate and distinct from its educational institution. (*Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12, 41 [request for leave to amend available for the first time in appellate court].) Sustaining a demurrer without leave to amend is proper " 'where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists.' " (*Traverso v. Department of Transp*ortation (2001) 87 Cal.App.4th 1142, 1144–1145.) Here, there is no dispute that construction of a hospital at Parnassus would advance the Regents' academic mission. As discussed above, constructing the New

15

Hospital would similarly advance the Regents' academic mission, even accepting as true the Coalition's allegations that UCSF's clinical services provided by the New Hospital would extend beyond those strictly necessary to satisfy this mission. Any facts in an amended complaint contradicting those allegations may be disregarded. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 ["plaintiff may not plead facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false"], italics omitted].) There is no reasonable probability the complaint can be cured by amendment. (*A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 687.)

In sum, because the New Hospital falls within the Regents' broad purposes to provide medical education for graduate students, a governmental activity — even if it may also bear some relationship to a proprietary activity — we hold the Regents are exempt from the local regulations at issue. Thus, the demurrer should have been sustained.

## DISPOSITION

Let the peremptory writ of mandate issue directing respondent court to vacate its order denying the Regents' demurrer and to enter a new order sustaining the demurrer. The temporary stay order is dissolved. The Regents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

16

_____

RODRÍGUEZ, J.

WE CONCUR:


_____

FUJISAKI, Acting P. J.


_____

PETROU, J.


A169318

17

San Francisco County Superior Court, Hon. Charles F. Haines.

Reed Smith, Raymond A. Cardozo, Sarah Johansen; University of California, Anagha Dandekar Clifford; Lubin Olson & Niewiadomski, Charles Olson, Philip Sciranka and Carolyn Lee, for Petitioner.

No appearance for Respondent.

Soluri Meserve, Patrick M. Soluri and Osha R. Meserve, for Real Party in Interest.